IN THE DISTRICT COURT OF CREEK COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
CREEK COUNTY SAPULPA OK

FEB -7 2022

TIME_____4:20_____
Amanda Vanderpool, COURT CLERK

| | |
|---|---|
| CHARLA WHITE, f/k/a LONG, individually and on behalf of the Estate of PERRISH NI-COLE WHITE, | ) ) ) ) |
| Plaintiffs, | ) ) CV-2022-2022 - 28 |
| v. | ) ) DOUGLAS W. GOLDEN |
| BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CREEK, BRET BOWLING, in his official capacity as Creek County Sheriff; TURN KEY HEALTH CLINICS, L.L.C. a domestic limited liability company, CODY SMITH, individually, MICHELLE STOVALL, individually, TODD GENE INKS, individually, and CYNTHIA THOMPSON, individually, | ) ) ) ) ) ) ) ) ) ) |
| Defendants[1]. | ) ) |

## PETITION

The Plaintiff Charla White, f/k/a Long, (Charla) on behalf of the Estate of Perrish Ni-Cole White (Perrish) (collectively Plaintiffs) hereby submit this Petition in the above captioned matter. In support thereof, Plaintiffs allege and state as follows:

1. Charla is an individual who resides in the State of Oklahoma and was married to Perrish at the time of his death.

2. Perrish is an individual who resided at the Creek County Criminal Justice Center, commonly known as the Creek County Jail at the time of his death.

3. Bret Bowling (Bowling) is the Creek County Sheriff and was employed as the duly elected Creek County Sheriff during the events at issue herein.

---

[1] Plaintiffs anticipate amending this petition as the names of the individual nurses and employees of both Turn Key and the jail are learned.

1

EXHIBIT 2

4.  Defendant Cody Smith (Smith) was the Jail Administrator at all material times herein. Defendants Michelle Stovall, Todd Gene Inks and Cynthia Thompson were deputies employed at the Creek County Jail and had actual knowledge of the need for medical care.

5.  The Board of County Commissioners of Creek County (Board) is a political subdivision and municipal corporation.

6.  Board is the governing body for Creek County public officials and is the proper party to be sued for claims against County officials not specified in 19 O.S. § 161.

7.  Board is named for the conduct of the Defendants amounting to an unconstitutional policy as specified below. To the extent 19 O.S. §§ 4 and 161 precludes naming Board as a party then such claims exist as to the individual Defendants in their official capacity.

8.  Under 19 O.S. § 161 Bowling is a "County Officer."

9.  Turn Key Health Clinics, L.L.C. (Turn Key) is an Oklahoma corporation that was contracted to perform medical services at the Creek County jail. That Defendant Turn Key Health Clinics, L.L.C. (Turn Key) is a private medical provider that provides medical services to the Creek County Jail. Turn Key is by law a state actor. Turn Key is also a recipient of federal funds.

10.  Turn Key Health does business throughout Oklahoma including Creek County, Oklahoma. Turn Key was, at all times relevant hereto, responsible, in part, for providing medical services and medication to Perrish while he was in the custody of the Creek County Sheriff's Department. Turn Key was additionally responsible, in part, for implementing Creek County Jail policies regarding medical care, assisting in developing those policies and in training and supervising its employees.

EXHIBIT 2

11. That Defendants Inks, Thompson, and Stovall were deputies with Creek County Jail and had actual knowledge of Perrish's need for medical care. Perrish and other inmates on his behalf made specific requests for his medical care.

12. Bowling as the Sheriff has a non-delegable duty to ensure the inmates are treated in a constitutional manner.

13. That 12 O.S. § 2017(A) provides that actions shall be prosecuted or defended by the real party in interest.

14. Perrish was husband to Charla at the time of his death; he was a father of five children; was a grandfather of two.

15. Perrish was in the custody of Creek County Jail from June 2, 2021 until his death on June 30, 2021. Specifically, in Creek County Case CF-2013-445, on May 5, 2021 Perrish stipulated to the State's motion to revoke his suspended sentence. On June 2, 2021 Perrish was sentenced to 6 years DOC and was committed to the Creek County Sheriff's Department and ordered to be immediately transported to DOC.

16. In addition to claims on behalf of the Estate, Charla also brings claims under 12 O.S. §§ 1053 & 1054.

17. Perrish White while in the custody of Creek county Jail requested medical care on numerous occasions and such requests were denied and/or ignored. Alas, on July 17, 2021 he was taken to the hospital diagnosed with COVID-19 and died on June 30, 2021. Prior to being taken to the hospital, Perrish White was suffering obvious signs of COVID-19 and was in need of treatment. He was suffering from respiratory problems, a headache and fever. His symptoms got progressively worse while at the Creek County Jail. He requested medical care on numerous

EXHIBIT 2

occasions; moreover other inmates did as well. Perrish's attorney in his criminal case called the Creek County jail and advised them of his need for medical care on numerous occasions.

18. On July 19, 2021 Perrish was admitted to OSU Medical Center in Tulsa for COVID-19 and respiratory failure. At the time, his oxygen saturation level was in the 70's. He was also diagnosed with acute kidney failure.

19. While at the jail, Perrish was suffering from chest pains, palpitations, leg swelling, abdominal pain and muscle pain.

20. Perrish's prior medical history included a diagnosis of chronic bronchitis. Further, Defendants were aware of risk factors including asthma, COPD, and obesity of Perrish.

21. Turn Key, Creek County Sheriff's Department, Creek County Jail and Board are state actors under applicable law and recipients of federal funding and required to comply with § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.* (504).

22. Turn Key, Creek County Sheriff's Office, Creek County Jail and Board were notified of Perish's pre-existing conditions and moreover was aware of his COVID symptoms, his long COVID symptoms, placing them on both actual and constructive notice of Plaintiff's condition an request and also imposed a duty of inquiry upon them as well.

23. The express prohibitions against disability-based discrimination in Section 504 and Title II include an affirmative obligation to make benefits, services, and programs accessible to disabled people. As such, an entity that provides services to the public cannot stand idly and such entities may very well need to act affirmatively to modify, supplement, or tailor their programs and services to make them accessible to persons with disabilities. *Alexander v. Choate*, 469 U.S. 287, 295 (1985), 42 U.S.C. § 12131(2) (requiring entities that provide services to the public to (1) make "reasonable modifications to rules, policies, or practices"; (2) "remov[e] . . .

EXHIBIT 2

architectural, communication, or transportation barriers"; and (3) "provi[de] auxiliary aids and services" so as to enable disabled persons to participate in programs or activities). Moreover, these modifications—called "accommodations" under Section 504 must be sufficient to provide a disabled person with an "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement" as a person who is not disabled. *Alexander,* 469 U.S. at 305 (quoting regulations implementing Section 504 quotation marks omitted)); see also 28 C.F.R. § 35.130(b)(1)(ii) (2014) (stating that a public entity discriminates in violation of Title II if qualified individuals with disabilities are given an "opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others").

24. Under 504 of the Rehabilitation Act, an individual has a disability if he or she "[has] a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A) (2012); see also 29 U.S.C. § 705(20) (2012). Furthermore, prisoners "have the same interest in access to the programs, services, and activities available to the other inmates of their prison as disabled people on the outside have to the counterpart programs, services, and activities available to free people[,]" *Crawford v. Indiana Dep't of Corr.*, 115 F.3d 481, 486 (7th Cir. 1997) abrogated on other grounds. The failure of prison staff to conduct an informed assessment of the abilities and accommodation needs of a new inmate who is obviously disabled violates 504.

25. Turn Key, Board, Creek County Sheriff's Department, Creek County Jail violated 504 by being unwilling to engage in a good faith interactive process to provide a reasonable accommodation; failing to provide a reasonable accommodation; thwarting the process and by failing to reasonably accommodate Perrish. This includes failure to do a proper assessment.

26. All defendants unreasonably delayed appropriate medical care for Perrish White.

EXHIBIT 2

27. While incarcerated at the Creek County Jail, Plaintiff was subjected to cruel and unusual punishment and an unreasonable seizure prohibited by the United States Constitution and applicable in this context through the 4th and 14th Amendments to the United States Constitution to Plaintiff as a pretrial detainee. Moreover, to the extent that such action occurred after his imposition of sentencing, such conduct violates the 8th Amendment's prohibition against cruel and unusual punishment.

28. That as a pretrial detainee, the Due Process Clause of the U.S. Constitution prohibits deliberate indifference to the serious medical needs of Plaintiff.

29. That an unconstitutional policy existed wherein inmates were discouraged from seeking necessary medical care, that Turn Key staff refused to allow the inmates access to necessary health care and the medical needs of the inmates were ignored.

30. Defendants failed to intervene in known unconstitutional conduct that occurred upon Plaintiffs.

31. That official and municipal liability exists as to Turn Key, under 42 U.S.C. § 1983 (1983) based on the unlawful policy of Turn Key and the failure to train and deficient hiring practices.

32. Turn Key has assumed the Sheriff's statutory duty under Title 57 to maintain the jail in a lawful manner. Such conduct amounts to municipal and official liability because 1) the conduct created an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; 2) such decisions are those of employees with final policymaking authority, including; Sheriff Bowling 3) such conduct has been ratified by final policy makers, including; and 4) the failure to adequately train or supervise employees

EXHIBIT 2

or *de facto* employees. The unconstitutional policy stated herein created the unlawful conduct upon Plaintiff.

### COUNT I - SECTION 504 OF THE REHABILITATION ACT-As to Turn Key, Board, Creek County Sheriff Department and Creek County Jail

Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs. Additionally, Plaintiffs allege:

33. 504 of the Rehabilitation Act of 1973 provides in pertinent part:

> [N]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ....

29 U.S.C. § 794.

34. Perrish was at all times relevant herein a qualified individual with a disability within the meaning of the Rehabilitation Act because she has impairments that substantially limit one or more of their major life activities. 29 U.S.C. 26 § 705(20) (B) as set forth above.

35. Plaintiff was otherwise qualified to participate in the services, programs, or activities of the jail. 29 U.S.C. § 794 (b).

36. At all times relevant to this action these Defendants were recipients of federal funding within the meaning of the Rehabilitation Act. As recipients of federal funds, they are required to reasonably accommodate inmates with disabilities in their facilities, program activities, and services. It further requires these Defendants to modify their facilities, services, and programs as necessary to accomplish this purpose.

37. Through their acts and omissions described herein, these Defendants have violated the Rehabilitation Act by excluding Perrish from participation in, denying Perrish the benefits of, and subjecting Perrish to discrimination in the benefits and services. Perrish was

EXHIBIT 2

retaliated against in violation of 504 as set forth above. Perrish was denied access to necessary medical care because of his disability, his pre-existing conditions, his obvious COVID-19 symptoms.

38. Perrish requested a reasonable accommodation-medical treatment, and these Defendants wholly failed to comply. Moreover, these Defendants discriminated against Perrish by wholly failing to an appropriate assessment and intake.

39. As a direct and proximate result of the aforementioned acts, Perrish suffered and continue to suffer humiliation, hardship, anxiety as well as financial damages due to the failures to address accommodations and modifications requested by Perrish.

40. Because these Defendants' discriminatory conduct is ongoing, declaratory and injunctive reliefs are appropriate remedies. This includes the performance of a proper, appropriate assessment. This includes appropriate screening and treatment for COVID-19 or similar medical conditions. Such assessment would include screening of risk factors. Thus immediate relief is appropriate. Pursuant to 29 U.S.C. § 794(a) Plaintiffs are entitled to declaratory and injunctive relief and to recover from these Defendants the reasonable attorneys' fees and costs incurred in this matter.

### COUNT II 42 U.S.C. § 1983 (As to all Defendants)

Plaintiffs restate and re-allege the foregoing allegations.

41. That Perrish is entitled to be afforded his constitutional rights. "The constitutional rights of a pretrial detainee…flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). "Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to

EXHIBIT 2

be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Id. (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Here, it appears the claim would be post conviction and the 8th Amendment applicable, but to the extent Perrish had not been sentenced yet, the 14th Amendment due process clause would apply. Under the Due Process Clause of the Fourteenth Amendment, the State owes "pretrial detainees…[a duty to provide] basic human needs, including medical care and protection from harm." Hare, 74 F.3d at 650; see U.S. Const. amend. XIV; City of Revere, 463 U.S. at 244. When officials demonstrate deliberate indifference to a pretrial detainee's serious medical needs, they violate the Fourteenth Amendment.

43. Defendants were aware of the need for medical care of Perrish but ignored such needs.

44. As a result of the conduct of Defendants, Plaintiffs have sustained actual damages in excess of $10,000.00.

45. Punitive damages should be assessed against Defendants.

46. Plaintiffs should be reimbursed for reasonable attorney fees and costs.

### COUNT III-WRONGFUL DEATH 12 O.S. § 1054-CHARLA WHITE (as to Board and Turn Key)

Plaintiffs restate and re-allege the foregoing allegations.

47. Charla was the wife of Perrish.

48. He passed away as outlined above and as result damages have been incurred both to Charla individually and on Perrish's behalf.

49. As a result of the conduct of Defendants, Plaintiffs have sustained actual damages

EXHIBIT 2

in excess of $10,000.00.

50. Punitive damages should be assessed against Defendants.

51. Plaintiffs should be reimbursed for reasonable attorney fees and costs.

WHEREFORE, Plaintiffs pursuant to 42 U.S.C. § 1983, Plaintiff's constitutional rights should be vindicated. Defendants acted with conscious disregard to the federally secured rights of Plaintiff and as such, punitive damages in excess of $10,000.00 should be assessed against them. As a result of Defendants' conduct, Plaintiff has suffered actual damages in excess of $75.000.00.

Brendan M. McHugh, OBA #18422
P.O. Box 1392
Claremore, OK 74018
Tele: (918) 608-0111
Fax: (918) 803-4910
-and-
Dana Jim, OBA #19495
P.O. Box 1011
Vinita, OK 74301
Tele: 918-457-6626
Fax: 918-517-3431
*Attorneys for Plaintiff*

**Jury Trial Demanded
Attorney Lien Claimed**

EXHIBIT 2