UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CHARLA WHITE, f/k/a Charla Long, as the )
Special Administratrix of the Estate of )
Perrish Ni-Cole White, )
)
      Plaintiff, )
)
v. ) Case No. 22-CV-0139-CVE-SH
)
BRET BOWLING, in his official capacity )
as Creek County Sherriff, )
TURN KEY HEALTH CLINICS, )
LLC,  MICHELLE STOVALL, individually, )
TODD GENE INKS, individually, )
CYNTHIA THOMPSON, individually, and )
DOES 1-5, )
)
      Defendants. )

## OPINION AND ORDER

Now before the Court is Defendant Turn Key Health Clinics, LLC's Motion to Dismiss (Dkt. # 32). Plaintiff Charla White filed this case on behalf of the Estate of Perrish Ni-Cole White alleging that Turn Key Health Clinics, LLC (Turn Key) ignored White's[1] obvious need for medical care while he was a pretrial detainee or inmate at the Creek County Criminal Justice Center (the Jail). Dkt. # 14, at 14-15. Turn Key asserts that plaintiff's allegations fail to establish a violation of White's constitutional rights and, even if the Court finds that White received constitutionally inadequate medical care, any violation of White's constitutional rights did not result from Turn Key's official custom or policy. Dkt. # 32, at 2, 14.

### I.

Plaintiff alleges that White was pretrial detainee or inmate at the Jail beginning on June 2, 2021. Dkt. # 14, at 4. White began to complain of severe and worsening headaches on July 5,

---

[1] The Court will refer to the decedent Perrish Ni-Cole White as "White" to distinguish between the named plaintiff and the decedent.

2021, and White was immediately concerned he had contracted COVID-19, given the close quarters within his housing pod, the ongoing pandemic, and his chronic bronchitis.  Id. Beginning on July 5, 2021, plaintiff asserts that White began notifying Turn Key medical personnel (Does one through five) and other Jail personnel of his worsening condition and need for urgent medical care.  Id. at 3-4.  Plaintiff alleges that White also requested a COVID-19 test, but plaintiff asserts that all of White's requests were denied or ignored. Id. at 5.

By July 8, 2021, White was coughing, had shortness of breath, and was refusing meals. Id. at 5. Plaintiff asserts that Does one through five and other Jail personnel observed White's worsening condition and received White's complaints regarding his condition, specifically regarding his shortness of breath and debilitating pain.  Id.  However, while plaintiff alleges that Jail personnel failed to provide White with a COVID-19 test, refer him to a physician, or transport him or request his transportation to a hospital, the amended complaint does not assert that White requested any of these measures.  Id. Plaintiff claims that White's condition had worsened to the extent that he could no longer make phone calls or request a "sick call" and was experiencing chest, abdominal, and muscle pain, palpitations, and leg swelling. Id. at 5.  On July 13, 2021, plaintiff notified Turn Key and other Jail personnel of White's illness and his urgent need for medical care.  Id.  However, plaintiff asserts that Turn Key and other Jail personnel ignored her request. Id.  White's criminal defense lawyer's assistant also called the Jail and requested that White receive urgent medical care, but plaintiff claims that this request was also ignored.  Id. at 6.

From July 13 to July 17, 2021, plaintiff called the Jail several times requesting that White receive medical care due to his worsening condition.  Id. at 6.  During this time, White's condition continued to deteriorate, exhibited by his limited mobility, moans of pain, audible

2

respiratory distress, crying, and the requests of other inmates for White to receive immediate medical attention. Id. Plaintiff asserts that Does one through five and other Jail personnel observed White's worsening condition and received White's complaints regarding his pain and shortness of breath, but failed to take any action to provide medical treatment to White during this time. Id. On July 17, 2021, White was transported to a hospital and diagnosed with COVID-19 upon admission. Id. at 7. Two days later, White was admitted to the OSU Medical Center in Tulsa and was additionally diagnosed with respiratory and acute kidney failure. Id. White was then placed on life support with a ventilator and dialysis. Id. On July 30, 2021, White died two weeks after being admitted to the hospital. Id.

Plaintiff filed this case alleging that Turn Key and others violated White's constitutional rights, and plaintiff asserts claims under 42 U.S.C. § 1983 against Turn Key, the Sheriff of Creek County, three detention officers employed by the Jail, and five unnamed employees of Turn Key identified as Does one through five. Id. at 14-15. Plaintiff claims that Does one through five, in deliberate indifference to White's serious medical needs, failed to provide White with a COVID-19 test, refer him to a physician, take his vital signs, or transport him or request his transportation to a hospital despite his obvious and continuing need for medical care. Id. at 5, 6. Plaintiff alleges that Turn Key acted with deliberate indifference to the medical needs of inmates like White by failing to implement necessary COVID-19 precautions at the Jail. Id. at 9. Plaintiff alleges that Turn Key may be held liable under a theory of municipal liability for maintaining a custom or policy of providing constitutionally inadequate medical care at the Jail. Id. at 13. Specifically, plaintiff claims that Turn Key inadequately trained staff, failed to implement COVID-19 precautions, employed only one physician for all of its Oklahoma facilities, and entered into a contract with the Jail that encouraged Turn Key to deny medical

care in order to increase its profits. Id. at 9, 10-11, 13. Additionally, plaintiff's amended complaint describes incidents from 2016 and 2017 where Turn Key allegedly failed to provide adequate medical care at the Jail and other Turn Key facilities in Oklahoma. Id. at 8-9, 11-13. Plaintiff further alleges that Turn Key knew its custom or policy of maintaining an inadequate and underfunded health care system in the Jail "was substantially certain to, and did, result in Constitutional deprivations." Id. at 9, 13.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555, 570 (citations omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (quoting Fed. R. Civ. P. 1) (internal quotations omitted). For the purpose of making the dismissal determination, a court must accept all the complaint's well-pleaded allegations as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee

4

Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim [up]on which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III.

Turn Key asserts that plaintiff failed to adequately allege the subjective component of a § 1983 deliberate indifference claim, and that, even if plaintiff adequately alleged this constitutional violation, she failed to identify a specific policy or custom adopted by Turn Key that caused the constitutional violation.[2] Dkt. # 32, at 9, 14. Plaintiff responds that Turn Key personnel disregarded White's complaints of severe headaches and breathing problems for days, and Turn Key showed deliberate indifference to White's serious medical needs. Further, plaintiff asserts that Turn Key had a policy of maintaining an inadequately funded health care delivery system that resulted in deliberate indifference to White's serious medical needs. Dkt. # 45, at 12, 14.

Under § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. The elements necessary to establish a § 1983 violation "vary with the constitutional provision at issue." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Regardless of the provision at issue, "[p]ersonal participation is an essential allegation in a § 1983 claim." Bennet v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). For § 1983 claims made against multiple individual government actors, "it is particularly important . . . that the complaint make clear

---

[2] Turn Key additionally alleges that plaintiff failed to adequately serve Turn Key by attempting service at an address that plaintiff knew to be not current and invalid. Dkt. # 32, at 1. However, there is no dispute that plaintiff later properly served Turn Key and the Court finds that the allegedly improper initial service of Turn Key is not a basis to dismiss plaintiff's claims. Id.

5

exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins v. Oklahoma, 519 F.3d 1242, 1249-1250 (10th Cir. 2008) (emphasis in original). "The complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by each named defendant to survive a motion to dismiss as to each defendant." Brewer v. Gilroy, 625 Fed. App'x 827, 833 (10th Cir. 2015) (quoting Ashcroft, 556 U.S. at 678) (internal quotations omitted).[3] When the defendant is a municipal entity, the "under color of state law" element of a § 1983 claim requires that the constitutional deprivation occurred pursuant to an official policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). To establish municipal liability, the plaintiff must allege the underlying constitutional violation in addition to municipal liability. Id. at 692.

### A. Deliberate Indifference

Plaintiff alleges that Turn Key violated White's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.[4] U.S. Const. amend. VIII, XIV. The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). To establish an Eighth Amendment violation, a plaintiff must demonstrate that a prison official acted with "deliberate indifference" by knowing and disregarding an excessive risk to an inmate's health or

---

[3]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[4]  The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same protection against denial of medical care as provided under the Eighth Amendment to convicted inmates. Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).

safety. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000); Farmer v. Brennan, 511 U.S. 825, 837 (1994). A plaintiff establishes a deliberate indifference claim by satisfying the claim's objective and subjective components. Sealock, 218 F.3d at 1209.

Under the objective component, the inmate must have suffered a sufficiently serious deprivation. Id. at 1209. A deprivation is sufficiently serious where the inmate's condition "'is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)). A delay in medical care fulfills this objective component where "the delay result[s] in substantial harm." Id. at 1210. A "lifelong handicap, permanent loss, and considerable pain . . ." fulfill the substantial harm requirement. Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)).

Under the subjective component, the defendant must have known the inmate "'faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" Martinez, 563 F.3d at 1089 (quoting Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006)). "The official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." Tafoya, 516 F.3d at 916 (emphasis in original). A plaintiff may satisfy the subjective component by alleging that a gatekeeper to medical care prevented the inmate from receiving treatment or denied him access to an individual "capable of evaluating the inmate's need for treatment . . . ." Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1137 (10th Cir. 2023). Under this component, a complete failure to act "in the face of serious medical needs is obviously sufficient to state a claim." Id. at 1139.

Accepting plaintiff's allegations as true, White began experiencing headaches as early as July 5, 2021 and White became concerned that he had COVID-19. Dkt. #14, at 4. Over the following twelve days, White's symptoms worsened from severe headaches to shortness of breath, coughing, audible respiratory distress, palpitations, immobility, leg swelling, and debilitating pain. Id. at 4-6. During this time, White notified Does one through five of his symptoms and his urgent need for medical care. Id. Plaintiff similarly notified Turn Key of White's urgent need for medical care. Id. at 5. Neither Turn Key nor Does one through five took any action for the twelve days following the onset of White's symptoms, failing to test White for COVID-19, take his vital signs, refer him to a physician, or transfer him or request his transfer to a hospital. Id. at 4-6. Almost two weeks after initially reporting his symptoms, White was transported to the hospital and diagnosed with COVID-19. Id. at 7. Two days later, White was placed on life support, and White died on July 30, 2021. Id.

The Court finds that plaintiff has adequately alleged a deliberate indifference claim against Turn Key based on the denial of medical treatment. To satisfy a deliberate indifference claim's objective component, the inmate must suffer an objectively serious deprivation. Sealock, 281 F.3d at 1209. Plaintiff alleges that Turn Key and its medical personnel, Does one through five, ignored White's obviously worsening condition and all requests that White receive medical treatment for twelve days. Dkt. #14, at 4-7. After this delay, White was taken to the hospital and diagnosed with COVID-19. Id. at 7. White died two weeks after his admission to the hospital. Id. Accepting plaintiff's allegations as true, plaintiff has adequately alleged that White's medical condition was sufficiently serious that a lay person would have believed that White needed at a minimum to be assessed by a medical professional to determine if he needed

medical treatment. Plaintiff's allegations sufficiently satisfy the objective component of a deliberate indifference claim against Turn Key.

To satisfy the deliberate indifference claim's subjective component, the offending officials must have acted with a sufficiently culpable state of mind. See Martinez, 563 F.3d at 1089. Plaintiff alleges that Turn Key and Does one through five ignored White's worsening condition and all requests for White to receive medical care for twelve days and failed to fulfill their sole obligation of referring or affording access to medical personnel capable of evaluating White's treatment needs. Dkt. #14, at 4-7. See Lucas, 58 F.4th at 1139. Accepting plaintiff's allegations as true, plaintiff has adequately alleged that Turn Key was subjectively aware of White's serious medical condition and disregarded the substantial risk of harm posed to White if he did not receive medical care. Thus, plaintiff's allegations sufficiently establish the objective and subjective components of a deliberate indifference claim against Turn Key.

### B. Municipal Liability

Under § 1983, a private entity acting under color of state law may be held liable for adopting an official policy or custom that causes a constitutional rights violation. Monell, 436 U.S. at 690-91; Lucas, 58 F.4th at 1144. However, a plaintiff may not sue a municipal entity under a respondeat superior liability theory. Monell, 436 U.S. at 691. Rather, to establish a § 1983 claim against a municipal entity, "a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." Lucas, 58 F.4th at 1145. A plaintiff may establish the existence of an official policy or custom by alleging a "systemic failure of medical policies and procedures." Id. Additionally, a plaintiff may sufficiently allege municipal liability where a custom or policy is carried out with insufficient staff. Garcia v. Salt Lake Cnty., 768 F.2d 303. 306-08 (10th Cir. 1985).

The Court finds that plaintiff has adequately alleged that White was denied medical care due to an official policy or custom maintained by Turn Key. To allege a deliberate indifference claim against a private entity acting under color of state law, the plaintiff must allege sufficient facts to support an inference that the constitutional violation resulted from the entity's official policy or custom. See Lucas, 58 F.4th at 1145. Plaintiff alleges that Turn Key had a custom or policy of maintaining an unconstitutional health care system, including inadequate medical care and staffing, a lack of protective policies, and the prioritization of cost-cutting measures, which resulted in Turn Key's deliberate indifference to White's medical needs. Dkt. # 14, at 7, 9-11.

Specifically, plaintiff alleges that Turn Key's deliberate indifference resulted from its custom or policy of cutting costs and prioritizing financial gain over providing constitutionally adequate medical care. Id. at 10. Plaintiff's allegations are similar to those provided by the plaintiff in Lucas. As in Lucas, plaintiff's allegation that Turn Key' contract does not contain minimum mandatory health expenditures is conclusory, as plaintiff fails to describe how this fact supports an inference of an unconstitutional cost-cutting policy. Id.; Dkt. # 14, at 10. Additionally, as in Lucas, plaintiff's allegations that Turn Key's contract fails to allocate financial responsibility between Turn Key and the Jail simply describes the entities' cost sharing agreement, and this would not by itself show that Turn Key denied White medical care due to an improper financial incentive. Dkt. # 14, at 10; Lucas, 58 F.4th at 1145. Thus, if the claim rested on these allegations alone, plaintiff's amended complaint would be insufficient to establish municipal liability.

However, plaintiff additionally asserts that Turn Key employs only one doctor for all of its Oklahoma facilities and plaintiff cites instances of allegedly inadequate care at the Jail and other Oklahoma Turn Key facilities involving Turn Key personnel. Dkt. # 14, at 7-9, 10, 12.

While plaintiff does not directly connect these deficiencies to White's denial of medical care, these allegations support an inference that Turn Key's custom or policy of maintaining an inadequately funded health care system, exhibited by its understaffing and past conduct, caused Turn Key's alleged deliberate indifference to White's obvious need for medical care. Considering all of plaintiff's allegations, plaintiff has adequately alleged that Turn Key ignored White's need for medical care due to an official policy of prioritizing financial gain over providing constitutionally adequate medical care. The Court finds that plaintiff's allegations sufficiently support an inference that White was denied medical care for his serious medical condition due to an official policy or custom, and Turn Key's motion to dismiss (Dkt. # 32) should be denied.

**IT IS THEREFORE ORDERED** that Defendant Turn Key Health Clinics, LLC's Motion to Dismiss (Dkt. # 32) is **denied**.

**DATED** this 10th day of May, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE