IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLA WHITE, f/k/a Long, as the Special Administratrix of the Estate of Perish Ni-Cole White,<br><br>    Plaintiff,<br><br>v.<br><br>BRETT BOWLING, in his official capacity as Creek County Sheriff; TURN KEY HEALTH CLINICS, L.L.C.; MICHELLE STOVALL; TODD GENE INKS; CYNTHIA THOMPSON; and DOES 1-5,<br><br>    Defendants. | Case No. 22-cv-00139-CVE-SH |

## OPINION AND ORDER

Before the Court is a motion to prevent Plaintiff from deposing two employees of Defendant Turn Key Health Clinics, L.L.C. ("Turn Key"). As the party seeking a protective order, Turn Key bears the burden of providing facts demonstrating its need for such an order. Turn Key has failed to meet this burden, and its motion will be denied.

### Background

This lawsuit relates to the death of Perish Ni-Cole White ("White") after his incarceration at the Creek County Criminal Justice Center (the "Jail") and diagnosis of COVID-19. (*See Generally* ECF No. 14.) According to Plaintiff, Turn Key was responsible for providing medical services, supervision, and medication to White while he was in the Jail. (*Id.* ¶ 5.) Plaintiff alleges White first became ill on July 5, 2021, with his condition worsening over the next several days. (*Id.* ¶¶ 14-22.) According to Plaintiff, during that time period, various Jail personnel and Turn Key ignored his worsening condition and the multiple requests by various persons—including White—that he receive medical treatment. (*Id.*) On July 17, 2021, White was transported to a hospital, where he was

diagnosed with COVID-19. (*Id.* ¶ 24.) Two days later, he was admitted to OSU Medical Center with respiratory and kidney failure; he died on July 30, 2021.[1] (*Id.* ¶¶ 25-26.)

In her complaint, Plaintiff alleges there was a policy or custom of inadequate medical care at the Jail. (*Id.* ¶¶ 27-58.) These inadequacies included inadequate staffing, which was purportedly evidenced by Dr. William Cooper, D.O. ("Cooper") acting as the medical director and sole physician for all of the correctional facilities staffed by Turn Key. (*Id.* ¶¶ 54-57.) Plaintiff also alleges that Turn Key had no clear policy with respect to the medical monitoring and care of inmates with complex or serious medical needs; provided no guidance to medical staff regarding the same; and had an established practice of failing to adequately assess and treat obvious or known symptoms of emergent and life-threatening conditions. (*Id.* ¶¶ 42-43.) As a result, Plaintiff asserts a claim against Turn Key for violating 42 U.S.C. § 1983, pursuant to a municipal liability theory. (*Id.* ¶¶ 59-67.) Further factual background can be found in the order of Judge Claire V. Eagan denying Turn Key's motion to dismiss. (ECF No. 63.)

## Current Dispute

The current dispute arises from Plaintiff's efforts to depose two Turn Key employees—(1) Cooper, the aforementioned Chief Medical Officer and Jail doctor; and (2) Flint Junod, Turn Key's Chief Executive Officer ("Junod"). Turn Key argues that the depositions should be quashed as an improper attempt to sidestep Fed. R. Civ. P. 30(b)(6) and/or because Cooper and Junod are "apex" officers for whom Plaintiff has not shown an adequate need to depose. (ECF No. 91 at 3-10.) Turn Key also complains of other deposition practices and asks for a protective order prohibiting Plaintiff "from

---

[1] The Amended Complaint states that White died on July 30, 2022, but this appears to be a scrivener's error, given that the Amended Complaint was filed in April 2022. (ECF No. 14.)

2

questioning Mr. Junod and Dr. Cooper beyond their personal knowledge at the time of their depositions, . . . from using exhibits without providing a copy to opposing counsel, and . . . from circumventing the Notice requirements of Rule 30(b)(6) with any question to Mr. Junod and Dr. Cooper as to Turn Key's official position on any topic." (*Id.* at 9-10.)

## Analysis

I.   **Individual Depositions vs. Corporate Depositions**

The Court first must address Turn Key's repeated—and erroneous—statements that depositions of individual corporate employees are somehow an improper artifice to "circumvent the procedure regarding corporate representative depositions" found in Rule 30(b)(6). As made clear when the rule was amended in 1970, corporate representative depositions were <u>not</u> intended to be a substitute for deposing individual corporate witnesses. Rather, the advisory committee noted that the "procedure supplements the existing practice whereby the examining party designates the corporate official to be deposed. Thus, if the examining party believes that certain officials who have not testified pursuant to [30(b)(6)] have added information, he may depose them." Fed. R. Civ. P. 30, advisory ctte.'s note, 1970 am., subdiv. (b)(6). Or, as Wright & Miller explain,

> The Rule 30(b)(6) procedure should be distinguished from the situation in which a party wants to take the deposition of a specific individual associated with the corporation . . . . [A] party who wishes the deposition of a specific officer or agent of a corporation may still obtain it and is not required to allow the corporation to decide for itself whose testimony the other party may have.

8A, Richard L. Marcus, Fed. Prac. & Proc. (Wright & Miller) Civ. § 2103 (3d ed.). Here, Plaintiff has chosen to seek testimony directly from corporate officers or employees of her own choosing and does not currently wish to take advantage of the supplemental procedures provided by Rule 30(b)(6). This is something she is entitled to do under Rule 30. However, as the advisory committee cautioned, "the availability and use made of the

procedures provided in" Rule 30(b)(6) are something the Court may consider when deciding whether to issue a protective order. The Court, therefore, will now turn to Turn Key's request for protection from these depositions.

## II.     Protective Orders and Apex Depositions

### A.     Applicable Standard

As Turn Key is aware, given its citation of the decision (ECF No. 91 at 4 n.1), the undersigned has previous addressed the appropriate standard to apply when a party seeks to depose high-level executives and government officials. *See Buck v. Rhoades,* No. 21-CV-0295-CVE-SH, 2023 WL 2058659 (N.D. Okla. Feb. 16, 2023). In *Buck*, the Court acknowledged the "apex doctrine" as being an additional consideration when determining a party's motion for protective order under Fed. R. Civ. P. 26(c). *Id*. at *2. The Court further <u>rejected</u> those cases that apply "a rebuttable presumption that requiring a high-level official to sit for a deposition is an undue burden unless the official possesses special or unique . . . information that cannot be obtained by a less intrusive method." *Id*. Turn Key apparently is asking the Court to reconsider this finding—citing many of the cases rejected by the Court in *Buck*.[2] The Court finds Turn Key's arguments unpersuasive.

Instead, the Court continues to find more persuasive a different approach—one that treats motions involving apex officials using the same standards governing any other protective order, but taking into consideration the special factors that apply to high-level officials. *Id*. These factors include

> whether the executive has unique personal knowledge of the matter in dispute; whether the information sought from the executive can be obtained from another witness or through an alternative discovery method; and

---

[2] (*See, e.g.*, ECF No. 91 at 5-6 (citing *Naylor Farms, Inc. v. Anadarko OGC Co.,* No. 11-CV-01528-REB-KLM, 2011 WL 2535067, at *1-2 (D. Colo. June 27, 2011) and *Tierra Blanca Ranch High Country Youth Program v. Gonzales,* 329 F.R.D. 694, 697 (D.N.M. 2019).)

4

> whether sitting for the deposition would serve as a severe hardship for the official in light of their company . . . obligations.

*Id.* at *3. As with all protective orders, the burden remains on the party seeking protection—here Turn Key. *See, e.g.*, *Okla. ex rel. Edmondson v. Tyson Foods, Inc.,* No. 05-CV-329-GKF-PJC, 2009 WL 10694083, at *2 (N.D. Okla. Apr. 24, 2009); *see also* Fed. R. Civ. P. 26. To establish good cause, Turn Key must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Edmondson,* 2009 WL 10694083, at *2 (internal quotation omitted); *see also* 8A Richard L. Marcus, Fed. Prac. & Proc. (Wright & Miller) Civ. § 2035 & n.39 (3d ed.) (collecting cases). The Court continues to use all information provided by the parties to reach a case-specific determination of the appropriate scope of discovery. *See* Fed. R. Civ. P. 26, advisory ctte.'s note, 2015 am.

### B. Applying the Standard to Cooper & Junod

Turn Key has declined to provide any facts in support of its motion for protective order other than to note the titles of Cooper and Junod; note Plaintiff's decision not to first take a 30(b)(6) deposition; and to vaguely note that the information sought could easily be obtained from other fact witnesses.[3] (ECF No. 91 at 7-8.) Turn Key has provided zero information on <u>what</u> burden or hardship would be imposed on Cooper or Junod were

---

[3] Turn Key also alleges that neither Junod nor Cooper were personally involved in White's medical care at the Jail. (ECF No. 91 at 2.) However, as a government's policy or custom is relevant in this case, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978), the Court sees little usefulness to this argument. *See Bryson v. Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (noting that a municipal policy or custom may take the form of formal policy statements, informal customs, the decisions of employees with final policymaking authority, ratification by final policymakers of certain decisions, and certain failures to adequately train or supervise employees).

5

they to sit for a deposition.[4] *Cf.* Fed. R. Civ. P. 26, advisory ctte.'s note, 2015 am. (noting, in a discussion of proportionality, that "[a] party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."). Given Turn Key's knowledge of the undersigned's prior determination of law in this area, this was a foolish risk on its part.

Instead, the Court is left with the specific facts provided by Plaintiff. For Cooper, these include that (1) Cooper was allegedly the roving physician responsible for overseeing patient care at facilities that included the Jail (ECF No. 14 at ¶¶ 54-55); and, more pertinently, (2) numerous e-mails indicating Cooper was heavily involved in crafting and updating personnel regarding COVID-19 testing, mitigation, and other policies—including as it related specifically to Creek County (ECF No. 99). The e-mails indicate that Cooper was involved both at the highest level and in the weeds—sometimes offering comprehensive policies and advice (e.g., *id.* at 22-30, 38-40, 42-43, 47-53)—and other times making specific comments on recommended temperature testing and masking for court appearances (*id.* at 13-14); clarifying details about policies (*id.* at 15, 41); questioning wasted vaccine doses (*id.* at 44); and answering specific questions as to which tests are more accurate, where to get tests analyzed, and whether masks are needed (*id.* at 12, 19, 55). Plaintiff has provided ample specific facts indicating that Cooper likely has personal knowledge that is uniquely concentrated in him—as opposed to the many

---

[4] In its reply, Turn Key broadly alludes to the "numerous correctional facilities across multiple states" that it services, and argues "it is implicit in [Junod and Cooper's] roles as chief officers that to be forced to sit for deposition[s] for a case which they are not parties and have no unique, personal knowledge[,] is burdensome . . . ." (ECF No. 101 at 8.) The Court finds reference to such "implicit" burden is nothing more than a conclusory statement. Further, without more information as to what hardship would be imposed on these deponents, the fact that Turn Key provides services to multiple correctional facilities, alone, is not the type of particular and specific demonstration of fact sufficient to show burden under Rule 26(c).

lower employees he regularly corresponded with and directed.[5] With these specific facts—and with no indication of what hardship would be imposed on Cooper by the deposition—the Court finds no basis for Turn Key's request.

The decision regarding Junod is much closer. The evidence provided by Plaintiff indicates that Junod was involved at a high level in Turn Key's COVID response and, it appears, distributed one of the early client updates on how Turn Key was responding to the COVID-19 pandemic.[6] (ECF No. 99 at 4-7.) Otherwise, it appears Junod was copied on many of Cooper's communications and directives to staff. (*Id.* at 2, 13-17, 42-43, 45-53.) Plaintiff also alleges, without additional evidence, that "through written discovery, Plaintiff has ascertained that Dr. Cooper and Mr. Junod were responsible for crafting Turn Key's COVID-19 policies and procedures" (ECF No. 98 at 4 (emphasis added))—although it is unclear whether this refers to anything more than the e-mail just discussed. Plaintiff further provides evidence that—when seeking the Jail's contract several years earlier—Turn Key promised that Junod (who lived in Creek County) would "have

---

[5] Indeed, Turn Key agrees that—were it served with a 30(b)(6) notice—it would likely designate Cooper as the corporate witness on Turn Key's policies. (ECF No. 101 at 2 n.1.) Turn Key simply prefers to do this after it has notice of the topics for the deposition. (*Id.*) The 30(b)(6) alternative procedure certainly has advantages for "both sides" by avoiding the prospect of a corporate officer "disclaim[ing] knowledge of facts that are clearly known to persons in the organization" while assisting in locating "who in the organization has knowledge." Fed. R. Civ. P. 30, advisory ctte.'s note, 1970 ams., subdiv. (b)(6). A party using the 30(b)(6) procedure also avoids fights over whether the deponent was an "officer, director, managing agent, or designee" of a party under Rule 32(a)(3). But, Plaintiff is free to forego these advantages—so long as the discovery is proportional and not unduly burdensome. Turn Key has no "right" to force Plaintiff to pursue its preferred mode of discovery absent a court order. *See* Fed. R. Civ. P. 26(d)(3).

[6] Contrary to Plaintiff's assertion, the Court does not read this e-mail as Junod sending Cooper an update on the actions Turn Key was taking. Instead, the e-mail appears to have been sent to an undisclosed e-mail list, with Cooper blind-copied on the e-mail. (ECF No. 99 at 4.) From subsequent e-mails, it appears this message was something the company sent to all of its clients. (*Id.* at 8.) It does not, therefore, appear that the message shows Junod was directing the policies of Turn Key, so much as distributing them.

extensive oversight of the operation and will respond to the facility within minutes should the need arise." (ECF No. 100 at 4.) It is not obvious from this evidence that Junod would necessarily have "unique personal knowledge of the matter in dispute" and it appears that much of the information referenced in the e-mails likely could be obtained from another witness—Cooper. As before, Turn Key has provided no indication of what hardship would be imposed on Junod by the deposition. With this information in mind, the Court must turn back to the parties' burdens.

It was Turn Key's burden to provide particular and specific facts demonstrating its need to be protected from annoyance, embarrassment, oppression, or undue burden or expense. This burden would not have been large, given the showing made by Plaintiff, but Turn Key made little effort to meet it. The Court, therefore, will deny Turn Key the relief it is seeking in this motion—without prejudice. The Court strongly encourages the parties to meet and confer regarding the issue of Junod's deposition, perhaps—if appropriate—after Plaintiff sees what information is available from Cooper or other witnesses. The parties should now be well-aware of the showings the Court will expect for any subsequent motion.

### III.    Turn Key's Alternative Request

In the alternative, Turn Key moves for a protective order limiting Plaintiff's questions to Cooper and Junod and prohibiting Turn Key from using exhibits without providing a copy to opposing counsel. (ECF No. 91 at 9-10.) As to the questions asked, Turn Key's request is denied for the reasons listed above. Plaintiff is free to inquire into the deponent's knowledge and—presumably—no deponent will testify beyond that knowledge. As these are not corporate representative depositions, there is no requirement that the deponent arrive at the deposition armed with any specific information.

Regarding the exhibits, it is unclear what Turn Key is requesting. If Plaintiff truly is questioning witnesses without allowing opposing counsel to see the exhibits, this practice should stop. If an exhibit is used at a deposition and will be included in the transcript, opposing counsel should have an opportunity to see it—at a minimum—by the time it is shown to the witness and inquired about. If the parties cannot reach an agreement on such basic issues in future depositions, they can seek relief from the Court. As it is, the Court currently does not have sufficient information to rule on Turn Key's request.

IT IS THEREFORE ORDERED that *Defendant Turn Key Health Clinic, LLC's Motion to Quash Plaintiff's Notice of Deposition to William Cooper, D.O. and Plaintiff's Deposition Subpoena to Flint Junod, and Motion for Protective Order* (ECF No. 91) is DENIED.

ORDERED this 6th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT